1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9    Kurt Adam Oldenburg,                    No. CV 14-02367-PHX-PGR (DMF)

10                        Plaintiff,          **REPORT AND**
                                              **RECOMMENDATION**
11   v.

12   Laura Ridge, et al.,

13                        Defendants.

14

15   **TO THE HONORABLE PAUL G. ROSENBLATT:**

16          Before the Court is Plaintiff's Motion to Amend (Doc. 14).  This matter is before

17   the undersigned on referral from the District Judge.   The Court has a continuing

18   obligation to screen complaints brought by prisoners seeking relief against an officer or

19   employee of a governmental entity.   *See* 28 U.S.C. § 1915A(a).   The screening

20   requirement extends to proposed amended complaints.   Because a magistrate judge

21   cannot decide a "matter dispositive of a claim or defense or a prisoner petition

22   challenging the conditions of confinement," Rule 72(b)(1), Federal Rules of Civil

23   Procedure, the undersigned recommends as follows.

24   **I.      Background**

25          Plaintiff Kurt Adam Oldenburg filed a *pro se* civil rights Complaint pursuant to 42

26   U.S.C. § 1983.  The Court granted Plaintiff's Application to Proceed *In Forma Pauperis*

27   and dismissed the Complaint for failure to state a claim.  (Doc. 5.)  Plaintiff filed a First

28   Amended Complaint (Doc 8) and the Court ordered Defendants Ridge and Pierce to

answer Plaintiff's ADA claim in Count One and the Eighth Amendment medical claim in Count Two regarding Plaintiff's discharge from the MTU.  (Doc. 9.)  The Court dismissed Plaintiff's claim in Count Two that he was placed in an isolation cell as punishment in violation of the Eight Amendment.  *Id*.  The Court also dismissed Defendant Rios and the claim in Count Three that Defendant Rios failed to provide mental health care in violation of the Eight Amendment.  *Id.*

Plaintiff has now filed a motion (Doc. 14) for leave to file his proposed Second Amended Complaint ("SAC") lodged at Doc. 15.

## II.    Standard for Granting or Denying a Motion to Amend

Fed. R. Civ. P. 15 governs amendments to pleadings generally.  Except when an amendment is pleaded as a "matter of course," as defined by the rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Courts must "freely give leave when justice so requires."  *Id.* Requests for leave are generally granted with "extreme liberality."  *Moss v. U. S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted).  However, granting a plaintiff leave to amend "is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile."  *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (citation omitted).

The Prison Litigation Reform Act requires dismissal of allegations that fail to state a claim upon which relief can be granted prior to ordering service of an amended complaint on the added defendants.  42 U.S.C. § 1997e(c)(1); *see, e.g., O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008).  Futility of amendment is sufficient to justify denial of a motion for leave to amend.  *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).  A proposed amended complaint is futile if it would be immediately "subject to dismissal" pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief may be granted, accepting all of the facts alleged as true.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).  In screening complaints, the

Court must liberally construe an incarcerated *pro se* plaintiff's complaint. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Plaintiff's proposed SAC attempts to cure the deficiencies in his Eighth Amendment claim against Defendant Rios and seeks to add new defendants and new causes of action.

### III.    Statutory Screening of Prisoner Complaints:

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

**IV.     Second Amended Complaint**

Plaintiff's nine-count SAC names the following Defendants:   Lead Psych Associate Laura Ridge, Deputy Warden Pierce, Psych Associate Elizabeth Rios, Psych Associate Elizabeth Fortune, Psych Associate James R. Gilchrist, Psychiatrist Winsky, Deputy Warden Stemple, Warden Therese Schroeder, Assistant Deputy Warden Cox, CO IV Bartuccio, Nursing Supervisor Venus David, Lead Psychologist Shelly Wolf, and Jane and/or John Doe(s).

Plaintiff claims that he was incarcerated at ASPC-Phoenix in the Men's Treatment Unit ("MTU") from February 11, 2014 to March 4, 2014. MTU is an intensive mental health care unit designed specifically to treat inmates suffering from serious mental illnesses and other psychological disorders who "exhibit functional impairment in the general population." Plaintiff states that he was designated as seriously mentally ill and suffers from schizoaffective disorder with risk of deterioration and co-morbidities, antisocial personality disorder, borderline personality disorder, and schizophrenia.

From February 13, 2014 through February 22, 2014, Plaintiff was unable to contact his sister and became distraught, "manifesting deterioration in routine functioning as evidenced by loss of cognitive and volitional control to such a degree that he repeatedly beseeched . . . staff members to contact his [sister] . . . to no avail." On

February 21, 2014, "Psych Associate" Coyer met with Plaintiff and asked Plaintiff for his sister's phone number.  Coyer called, received no answer, and told Plaintiff that when Coyer makes contact, he will call for Plaintiff.  On February 22, 2014, Coyer summoned Plaintiff to his office and allowed Plaintiff to speak with his sister on the phone.

On March 4, 2014, Defendant Ridge called Plaintiff to her office and informed Plaintiff that she was placing him on suicide watch "due to plaintiff being (verbally) placed on report for a rule infraction."  Defendant Ridge accused Plaintiff of manipulating staff in order to receive the phone call to his sister.  Defendant Pierce arrived shortly thereafter and berated Plaintiff for manipulating staff and stated that Defendant Pierce was the one who let Plaintiff "come here" and that he would "think about letting [Plaintiff] come back while [he is] in watch."  Plaintiff was then transferred to a psychiatric isolation cell in the Flaminco Unit.

On March 5, 2014, psychologist Dr. Jason Newell "countermanded and reversed" Defendant Ridge's decision to place Plaintiff on suicide watch.  Later that day, Dr. Newell informed Plaintiff that Defendants Ridge and Pierce had discharged Plaintiff from MTU.  On March 10, 2014, Plaintiff was transferred to ASPC-Tucson, Whetstone Unit.

In a March 25, 2014 meeting, Defendant Rios informed Plaintiff that Defendant Rios had personally participated in a statewide mental health teleconference with the clinical team in Phoenix at MTU, concerning Plaintiff's readmission to MTU.  Defendant Rios stated to Plaintiff that "the decision by the clinical team at MTU was that plaintiff could re-apply to MTU in one (calendar) year from the date of his discharge."  Defendant Rios further stated to Plaintiff that if he follows her instructions he could go to mental health treatment at Flaminco Unit in ninety days.  Plaintiff alleges that Defendant Rios told him that he was not to attempt to contact her "via an uninvited visit"; he was not to submit Health Needs Requests as an excuse to see her and that he would receive a disciplinary ticket if he did so; and that he was to wait until called for weekly meetings.

Plaintiff claims that Defendant Rios failed to meet with Plaintiff on a weekly basis, and when she did meet with Plaintiff the meetings lasted no more than five

minutes.  Plaintiff claims that Defendant Rios met with Plaintiff on June 4, 2014, to discuss a grievance Plaintiff had filed.  Defendant Rios told Plaintiff that the reason she was not calling him for the weekly meetings was because Corizon does not provide sufficient mental health staff to allow her to meet with Plaintiff weekly as promised because she has too many patients on her caseload.

Plaintiff claims that on September 17, 2014, he met with Defendant Rios to request his return to MTU, and Defendant Rios told him that he had to wait one year before MTU would even consider whether to take him back.

On October 16, 2014, Plaintiff met with Psych Associate Gilchrist and requested non-pharmaceutical mental health treatment through mental health programming, services, and activities at Whetstone.  Defendant Gilchrist responded "[t]hat's just not going to happen here, I'm sorry."  Plaintiff alleges that on October 17, 2014, he learned that the clinical team had considered his request to return to MTU and had decided that Plaintiff could reapply 90 days from the date of his discharge, not one year.

Psyche Associate Elizabeth Fortune succeeded Defendant Rios and took over the mental health caseload for Corizon and the referrals for the MTU.  Plaintiff was reassigned to Defendant Fortune and met with her on October 17, 2014.  At the meeting, Defendant Fortune indicated that she was aware of Plaintiff's mental health condition and aware of Defendant Rio's statements regarding Plaintiff's one-year wait to return to MTU.  Plaintiff alleges that he told Defendant Fortune about the 90-day reapplication determination made by the team in Phoenix.  Defendant Fortune stated she would discuss that matter with Psych Associate James R. Gilchrist, and would call Plaintiff in one week to discuss the matter.

When Defendant Fortune failed to call for Plaintiff in one week, Plaintiff initiated a meeting with Defendant Fortune on October 27, 2014.  Plaintiff again requested mental health treatment and Defendant Fortune responded "[t]hat will not happen anytime in the near future."  Defendant Fortune told Plaintiff that she believed that Plaintiff had misread the response from the Director regarding reapplying to the MTU.  Plaintiff alleges that

Defendant Fortune stated that Plaintiff's proposal to be immediately returned to MTU was denied, she then began to speak of a grievance Plaintiff had filed against Psychiatrist Winsky.  When Plaintiff requested an application for MTU, Defendant Fortune indicated that she would not recommend Plaintiff's acceptance into MTU because Plaintiff had filed grievances against mental health and that is her department.  Plaintiff alleges that Defendant Fortune stated that Plaintiff's grievances show that Plaintiff is "in a chaotic, confused state" and that Plaintiff should quit filing grievances, get on medication "and then we will talk about it."  Defendant Fortune told Plaintiff that MTU had changed their requirements and they would not accept Plaintiff if he was not on medication.  Defendant Fortune then told Plaintiff that Plaintiff's participation in mental health treatment at Whetstone would "not happen anytime in the near future."

On October 30, 2014, Plaintiff requested non-pharmaceutical mental health treatment by submitting an HNR.  Plaintiff has never been called by any mental health staff to discuss the HNR.

On November 7, 2014, Plaintiff met with Defendant Gilchrist at the Whetstone medical inmate waiting area and told Defendant Gilchrist that Plaintiff had been instructed by his attorney from the Arizona Center for Disability Law to fill out an application for MTU.  Plaintiff alleges that Defendant Gilchrist refused to give Plaintiff an application and indicated that "[w]e're not going to recommend you and they're (i.e. MTU) not going to accept you."

Defendant Winsky is a psychiatrist at Whetstone Unit.  In May, 2014, Plaintiff met with Defendant Winsky in response to a Health Needs Request ("HNR") that Plaintiff submitted, complaining of being "discombobulated from being too heavily medicated by Def. Winsky on psychotropic medication loxitane."  Plaintiff alleges that Defendant Winsky responded that Plaintiff had just been "self-medicating for emotional problems and insomnia."  On June 1, 2014, Plaintiff submitted an HNR complaining of adverse side-effects from the Loxitane causing muscle spasms in Plaintiff's face and neck muscles.  On June 10, 2014, Defendant Winsky met with Plaintiff in response to the HNR

and discontinued the Loxitane.  Plaintiff alleges that he requested prescriptions for Seroquel, Brupropion and Adavan, but Defendant Winsky advised Plaintiff that he cannot prescribe the requested medications because they are restricted in the ADOC.  Plaintiff alleges that although this June 10 meeting only lasted two minutes, Defendant Rios informed Plaintiff that Defendant Winsky downgraded Plaintiff's SMI diagnosis, classification and determination to "none" after the meeting.  Defendant Winsky accessed Plaintiff's mental health records, files and computer files.  Defendant Rios clarified to Plaintiff that Defendant Winsky cannot do that and that she would correct it. On August 29, 2014, Plaintiff met with Defendants Rios and Winsky, and when asked what drugs Plaintiff thought would work, Plaintiff again requested Seroquel, Bropropion, and Adavan.  Defendant Winsky responded that he had already told Plaintiff that those are all restricted by ADOC policy.

On November 17, 2014, Plaintiff met with Defendants Winsky, Gilchrist and Fortune.  When Plaintiff was called from the waiting room, he asked Officer Haynes if he would accompany Plaintiff because Plaintiff was uncomfortable meeting with the Defendants by himself in light of the grievances he had filed against the Defendants and the lack of witnesses present.  Officer Haynes agreed to accompany Plaintiff.  Defendant Winsky again stated that the medications Plaintiff requested were restricted by ADOC. When Plaintiff responded that they both knew that wasn't true, Defendant Winsky indicated that there may be a couple from Alhambra or parole violators that are here for a very short period time, like for the weekend.  Defendant Winsky also informed Plaintiff that Plaintiff's request to review his mental health records was "very rare" and was being denied.  Plaintiff then asked Defendant Gilchrist for an application to MTU.  Defendant Gilchrist responded that they were not going to recommend Plaintiff, and Defendant Fortune stated that they were not recommending Plaintiff because he was not stable. Plaintiff then asked Defendant Winsky if he was refusing Plaintiff his medication, and he replied "no, DOC is."  Plaintiff then asked the Defendants to write down everything that they said to Plaintiff during the meeting, and they refused.  After the meeting, Plaintiff

returned to his housing location and was informed that the Defendants had arranged for Plaintiff to be transported to a psychiatric isolation cell at ASPC-Tucson, Rincon Unit via radio calls for a transport vehicle, but that the transport had been cancelled just prior to Plaintiff arriving back at his housing location.

On November 19, 2014, Plaintiff learned from a Corizon nurse that his SMI classification had been downgraded to "none" after the November 17th meeting. Defendant Gilchrist also informed Plaintiff on November 19, 2014, that they were changing his SMI status to "none."

Plaintiff filed and pursued numerous grievances against the Defendants from May 29, 2014 to December 24, 2014, alleging constitutional violations while he was incarcerated at Whetstone.  On January 8, 2015, Plaintiff filed a formal grievance against Defendant Winsky, and Defendant Bartuccio received, signed, and processed the grievance on January 12, 2015.  On January 12, 2015, Plaintiff was notified of a "psych line 1" appointment scheduled for January 13, 2015.  Plaintiff attended the meeting, where Defendants Bartuccio, Cox, Stemple, David, Winsky, Gilchrist and Wolf were present.  Defendant Wolf communicated to Plaintiff that it is the position of the Defendants present that Plaintiff is abusing the grievance procedure by filing duplicate grievances that are burdening limited resources like staff time.  Defendant Stemple indicated that filing duplicate grievances was against grievance policy, and that if Plaintiff filed any more grievances they will be unprocessed and Plaintiff will receive a group B disciplinary violation (i.e. major/felony)  for hindering staff.  Plaintiff asked if this was in relation to his most recent grievance against Defendant Winsky, and Defendant Wolf responded that it was not.

Plaintiff alleges that Whetstone has two Psych Associates (sometimes only one) for approximately 1,250 inmates, approximately 770 inmates have a mental health score of three, and approximately 170 inmates are SMI.  Plaintiff alleges that Whetstone had not had an on-site Psychologist since January, 2014.  Plaintiff alleges that Psych Associate Fortune possesses only a LISAC—Licensed Substance Abuse Counselor.

1   Plaintiff seeks declaratory and injunctive relief as well as monetary damages.

2   **1.   Count One**

3   Count One of Plaintiff's SAC is Plaintiff's ADA claim against Defendants Ridge

4   and Pierce in their official capacities, which the Court previously held was sufficient to

5   state a claim.   Therefore, the Court recommends that Defendants Ridge and Pierce be

6   required to answer Count One of Plaintiff's SAC.

7   **2.   Count Two**

8   **A.  Isolation Cell**

9   Plaintiff claims Defendants Ridge and Pierce violated his Eighth Amendment

10   rights when they placed him in isolation as a form of punishment.   Plaintiff claims the

11   isolation cell exacerbated his mental illness and that he "experienced debilitating

12   deterioration of his mental, moral, and physical health, and suffered through

13   uncontrollable apprehension/fright, acute and severe anxiety–seizing his chest . . . in

14   conjunction with extremely elevated heart-rate, blood pressure, migraine headaches and

15   mental anguish."

16   "Holding inmates with serious mental illness in prolonged isolated confinement

17   may cause serious illness and needless suffering in violation of the Eighth Amendment."

18   *Graves v. Arpaio*, 48 F. Supp. 3d 1318, 1335–36 (D. Ariz. 2014) (citing *Colemen v.*

19   *Brown*, 938 F. Supp. 2d 955, 979 (E.D. Cal. 2013) (mentally ill inmates in administrative

20   segregation faced substantial risk of serious harm, including exacerbation of mental

21   illness and potential increase in suicide risk)).   Courts must consider both the length of

22   the segregated confinement of inmates with serious mental illness and the specific

23   conditions of the confinement, when determining whether segregated confinement meets

24   constitutional standards.   *Graves*, 48 F. Supp. 3d at 1336 (citing *Hutto v. Finney*, 437

25   U.S. 678, 686 (1978)).   Conditions to be considered include:

26   (1) the length of time prisoners with mental illness spent in
solitary confinement (approximately 22 hours or more a day);

27   (2) the extent to which solitary confinement interfered with
prisoners' ability to obtain adequate mental health treatment;

28   (3) the conditions accompanying the solitary confinement

experienced by prisoners with serious mental illness; and (4) the extent to which systemic deficiencies at the facility, *e.g.*, deficiencies in mental health programming, screening, and accountability, contributed to an overreliance on solitary confinement as a means of controlling prisoners with serious mental illness.

*Id.* (citing *Coleman v. Brown*, CV-90-00520-LKK-DAD, Doc. 4919, 2013 WL 6071977 (E.D. Cal. Nov. 12, 2013) (publication of the United States Department of Justice, Civil Rights Division)).

The Court finds that Plaintiff has not cured the deficiencies in his isolation cell claim. The only facts that Plaintiff has added in his proposed SAC, are that he was stripped of every article of clothing and personal property upon entering the isolation cell, but Dr. Newell ordered his clothing returned to him on March 5, 2014; that Dr. Newell told Plaintiff "clearly you are not suicidal"; and Plaintiff clarifies his duration in the isolation cell. Because Plaintiff alleged that he was placed in the isolation cell on March 4, 2014, and that Dr. Newell countermanded and reversed the decision to place Plaintiff on suicide watch on March 5, 2014, the Court previously held that Plaintiff's short confinement—less than twenty-four hours—is not sufficient to rise to the level of an Eighth Amendment violation and the Court dismissed this portion of Count Two. (Doc. 9 at 7). Plaintiff now clarifies that although Dr. Newell reversed the decision on March 5, 2014, Plaintiff remained in the isolation cell from approximately 4:45 p.m. on March 4, 2014, to 5:30 a.m. on March 10, 2014.

Whether conditions of confinement rise to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to those conditions. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.")). Although Plaintiff now alleges that he was in the isolation cell for five-and-a-half days, that duration does not rise to the level of a constitutional violation without other

conditions accompanying the solitary confinement. Although Plaintiff alleges that he was stripped of every article of clothing and personal property upon entering the isolation cell, his clothing was returned to him the following day. Plaintiff has not alleged any other specific conditions of the confinement. The Court recommends that the isolation cell claim in Count Two be dismissed for failure to state a claim.

**B. Discharge from MTU**

Plaintiff claims that Defendants Ridge and Pierce violated his Eighth Amendment rights when they "deliberately circumvented Dr. Newell's professional medical decision to have plaintiff returned to MTU, under Dr. Newell's care, supervision, and treatment." Plaintiff claims that in discharging Plaintiff from MTU, Defendants Ridge and Pierce "deliberately placed plaintiff in a precarious psychological position." The Court previously held that Plaintiff stated an Eighth Amendment medical claim with regard to his discharge from MTU, against Defendants Ridge and Pierce in their individual capacities. Therefore, the Court recommends that Defendants Ridge and Pierce be required to answer this claim in the SAC.

**3. Count Three**

Plaintiff alleges that Defendant Rios violated his Eighth Amendment rights by failing to provide adequate mental health care; specifically, Plaintiff alleges that Defendant Rios intentionally and purposefully interfered with a clinical team decision that Plaintiff could reapply to MTU 90 days after his discharge from MTU, not one year after as she told Plaintiff. The Court previously held, in finding that Plaintiff failed to state a claim against Defendant Rios in Count Three of the First Amended Complaint:

> To the extent Defendant Rios informed Plaintiff he could re-apply to the MTU in one year rather than 90 days, Plaintiff alleges no facts to support his claim that this was an intentional misrepresentation by Defendant Rios. With respect to Plaintiff's allegation that Defendant Rios failed to meet with him on a weekly basis, Plaintiff states that defendant Rios informed him Corizon did not provide sufficient mental health staff for Defendant Rios to meet with plaintiff as frequently as she would like, and that she had too

- 12 -

1
2
3
4

> many patients in her caseload.  Plaintiff has not demonstrated that Defendant Rios was indifferent to his medical needs, but rather that institutional-level administrative and staffing decisions prevented her from meeting with him on a weekly basis.

5

(Doc. 9 at 8).

6
7
8
9
10
11
12
13
14

Plaintiff claims that Defendant Rios was aware of Plaintiff's diagnosis and the severity of Plaintiff's mental health condition, that she stated the she personally participated in the March 24, 2014 statewide mental health teleconference with the clinical mental health team in Phoenix at MTU concerning Plaintiff's readmission, and that she intentionally misrepresented to Plaintiff the determination made by the team. Liberally construed, Plaintiff has stated an Eighth Amendment claim in Count Three and the Court recommends that Defendant Rios be required to answer this claim in the SAC which regards the allegation that Defendant Rios intentionally misrepresented the period for reapplication to MTU.

15

**4.     Count Four**

16
17
18
19
20
21

Plaintiff alleges Defendant Fortune violated his First and Eighth Amendment rights by retaliating against Plaintiff for filing grievances against the mental health department and for denying him mental health treatment.  Plaintiff alleges that Defendant Fortune refused to recommend Plaintiff's acceptance to MTU, refused to provide Plaintiff with an application to MTU, and denied Plaintiff's participation in mental health treatment at Whetstone.

22
23
24
25
26
27
28

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action

"advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff alleges that Defendant Fortune indicated she would not recommend Plaintiff's acceptance into MTU because Plaintiff had filed grievances against the mental health department. Plaintiff further alleged that Defendant Fortune stated that Plaintiff's grievances show that Plaintiff is "in a chaotic, confused state" and that Plaintiff should quit filing grievances and get on medication, and that MTU had changed their requirements and they would not accept Plaintiff if he was not on medication. Plaintiff has failed to allege that Defendant Fortune acted in retaliation for his exercise of a constitutionally protected right or that her actions did not advance a legitimate penological interest. Plaintiff has failed to state a claim for retaliation in Count Four.

Plaintiff also claims that Defendant Fortune violated his Eighth Amendment rights by denying him mental health treatment. Plaintiff alleges that Defendant Fortune refused to recommend Plaintiff's acceptance to MTU, refused to provide Plaintiff with an application to MTU, and denied Plaintiff's participation in mental health treatment at Whetstone.

With regard to a claim that a defendant violated the plaintiff's Eight Amendment right to be free of cruel and unusual punishment with regard to a prisoner's medical treatment, the plaintiff must show the defendant was "deliberately indifferent" to the plaintiff's "serious medical need." *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014). A prison official acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,"

but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). A "serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation and internal quotations omitted), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison [officials] provide medical care." *Jett*, 439 F.3d at 1096 (citations and internal quotation marks omitted). However, the alleged indifference to the prisoner's medical needs must be substantial; mere indifference, negligence, or even an allegation of medical malpractice, is insufficient to state an Eight Amendment claim. *Lemire v. California Dep't of Corr.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013) (citation omitted). "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Id*. at 1082 (citation omitted).

Plaintiff alleges that Defendant Fortune stated that Plaintiff was not eligible for admittance in MTU because he was not on medication. Plaintiff has failed to allege that Defendant Fortune was deliberately indifferent by failing to give him an application or recommending him to MTU.

Plaintiff also alleges that Defendant Fortune violated his Eighth Amendment rights by denying Plaintiff mental health treatment. Despite the statement Plaintiff attributes to Defendant Fortune in October 2014, Plaintiff did meet with other mental health professionals while at Whetstone. According to Plaintiff, he had been medicated as a part of his mental health treatment in 2014 as well as had multiple visits with a psychiatrist, Defendant Winsky, before and after Defendant Fortune's statement. Plaintiff has not shown that Defendant Fortune acted with deliberate indifference to Plaintiff's serious medical needs. For there to be a claim, the indifference must be

substantial; the action must rise to a level of "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 105 (1976).   Plaintiff has failed to state an Eighth Amendment claim against Defendant Fortune.

**5.     Count Five**

Plaintiff alleges Defendant Gilchrist violated his First and Eighth Amendments rights by retaliating against Plaintiff and denying Plaintiff mental health treatment. Plaintiff alleges that Defendant Gilchrist acted in collusion with Defendant Fortune to retaliate against Plaintiff for filing grievances against medical health staff.   Plaintiff alleges that Defendant Gilchrist was aware of Plaintiff's diagnosis and the severity of Plaintiff's mental health condition, and interfered with Plaintiff's attempts to resume mental health treatment at MTU.

Plaintiff alleges that when Plaintiff requested non-pharmaceutical mental health treatment through mental health programming, services, and activities at Whetstone, Defendant Gilchrist responded "[t]hat's just not going to happen here, I'm sorry." Plaintiff also claims that Defendant Gilchrist refused to give Plaintiff an application for MTU and indicated that "[w]e're not going to recommend you and they're not going to accept you."  Plaintiff has failed to allege that Defendant Gilchrist acted in retaliation for Plaintiff's exercise of a constitutionally protected right or that his actions did not advance a legitimate penological interest.   Plaintiff has failed to state a claim for retaliation in Count Five.

Plaintiff also alleges that Defendant Gilchrist violated his Eighth Amendment rights by denying Plaintiff mental health treatment.   Despite the statement Plaintiff attributes to Defendant Gilchrist, Plaintiff did meet with other mental health professionals while at Whetstone.    According to Plaintiff, he had been medicated as a part of his mental health treatment in 2014 as well as had multiple visits with a psychiatrist, Defendant Winsky, as well as two other Psyche Associates, Defendant Rios and Defendant Fortune, before and after Defendant Gilchrist's statement.    There is no allegation that Defendant Gilchrist directed the actions of Defendants Winsky, Rios, or

Fortune regarding medical care for Plaintiff.  Plaintiff has not shown that Defendant Gilchrist acted with deliberate indifference to Plaintiff's serious medical needs.  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Plaintiff has failed to state an Eighth Amendment claim against Defendant Gilchrist.

### 6.    Count Six

Plaintiff claims Defendant Winsky violated his Eighth Amendment rights regarding his mental health care.  Plaintiff alleges that the psychotropic drugs that Plaintiff requested, and that Defendant Winsky stated were not allowed by ADOC policy, are in fact allowed and have been prescribed by Defendant Winsky to other inmates at ADOC.  Plaintiff alleges that Defendant Winsky downgraded Plaintiff's mental health diagnosis and denied Plaintiff non-pharmaceutical and pharmaceutical mental health care, treatment, programming, and services.

Plaintiff alleges that Defendant Fortune stated that he had to get on medication to be eligible to apply to MTU.  Although a disagreement with his medical provider's decision regarding which medications to prescribe does not rise to the level of deliberate indifference, Plaintiff also alleges that medical attention was denied entirely after the Loxitane prescribed by Defendant Winsky in May, 2014, was discontinued on June 10, 2014, on Plaintiff's request.  Although Defendant Winsky met with Plaintiff after June 10, 2014, Plaintiff alleges that no medications or therapies were thereafter offered or provided to treat Plaintiff's mental health.  Liberally construed, Plaintiff has stated an Eighth Amendment claim against Defendant Winsky for failure to provide Plaintiff with mental health treatment after June 10, 2014.

### 7.    Count Seven

Plaintiff alleges Defendants Winsky, Gilchrist and Fortune violated his First and Eighth Amendment rights by retaliating against him for filing grievances and by denying him mental health treatment.  Plaintiff alleges that Defendants misdiagnosed and downgraded his SMI status after meeting with Plaintiff for no more than five minutes,

with no evidence to support their clinical findings.  To the extent Plaintiff's claims in Count Seven are duplicative of his claims in Counts Four, Five and Six, they should be denied.  Plaintiff's allegations regarding the downgrading of his SMI status also fail to state a claim.  Plaintiff alleges that Defendant Winsky downgraded his status to "none" following the June 10, 2014 meeting.  Although Plaintiff alleges that the meeting only lasted a few minutes, he also states that Defendant Winsky accessed Plaintiff's mental health records, files and computer files.  Although Plaintiff also alleges that a nurse told him that his SMI classification was downgraded to "none" after the November 17, 2014 meeting, and that Defendant Gilchrist informed Plaintiff on November 19, 2014, that "they" were changing his SMI status to "none," Plaintiff does not allege who downgraded his status or if in fact is was downgraded.  Plaintiff has failed to state a claim of deliberate indifference to his serious medical need in Count Seven.[1]

### 8.    Count Eight

Plaintiff claims that Defendants Stemple, Schroeder, Cox, Bartuccio, David, Winsky, Gilchrist and Wolf, retaliated against Plaintiff in violation of the First Amendment.  Plaintiff alleges that the January 13, 2015 meeting was for the sole purpose to demonstrate an unequivocal show of force and solidarity in support of a retaliatory intimidation tactic.  Plaintiff does not allege that Defendants told him not to file grievances, but rather they told him to stop filing duplicate grievances.  Plaintiff fails to allege that the January 13, 2015 meeting was an adverse action that chilled his exercise of his First Amendment rights or that Defendants' actions did not advance a legitimate penological interest.  Plaintiff fails to state a claim in Count Eight and it should be dismissed.

---

[1] Plaintiff also alleges that Defendants have disregarded the Settlement Agreement in *Parsons v. Ryan*, CV 12-00601-PHX-DKD (Doc. 1185).  However, the Settlement Agreement provides the terms for monitoring compliance and relief under the Settlement Agreement should be pursued in that case pursuant to those terms.

### 9.      Count Nine

Plaintiff alleges Jane and/or John Doe(s) violated his Eighth Amendments rights by denying him mental health treatment.  Plaintiff identifies Jane and/or John Doe(s) as employed by Corizon as institutional-level administrator(s) and/or Whetstone administrator(s) or supervisor(s) whom are/is responsible for mental health staffing decisions at Whetstone during the events at issue.  Plaintiff alleges that the Jane/John Doe Defendants have refused to replace the vacant Psychologist position at Whetstone since January 2014.  Plaintiff alleges that allowing Defendant Fortune to perform the duties of a Psych Associate with only a LISAC license and without the supervision of a psychiatrist and/or psychologist constitutes deliberate indifference.

To state a § 1983 claim based on a policy, practice, or custom, the Plaintiff must show that:  (1) plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the "moving force behind the constitutional violation."  *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (citation omitted).   "A policy of medical understaffing may show deliberate indifference."  *Graves v. Arpaio*, 48 F. Supp. 3d 1318, (D. Ariz. 2014) (citing *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988), *vacated and remanded*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989)).

Plaintiff fails, however, to allege facts to support that any of them promulgated or endorsed a policy or custom that resulted in the violation of Plaintiff's constitutional rights.   Further, because there is no *respondeat superior* liability under § 1983, a defendant's position as the employer of someone who allegedly violated a plaintiff's constitutional rights does not make it liable.  *Monell*, 436 U.S. at 691; *Taylor*, 880 F.2d at 1045.  Plaintiff's allegations are vague and conclusory, particularly regarding when, how, or what policies resulted in a violation of his constitutional rights.  Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972),

conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  *Id.*  Accordingly, Count Nine fails to state a claim.

**IV.     Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has stated:  an ADA claim in Count One against Defendants Ridge and Pierce; an Eighth Amendment medical claim in Count Two regarding his discharge from MTU, against Defendants Ridge and Pierce; an Eighth Amendment medical claim in Count Three against Defendant Rios regarding Defendant Rios' communication of the timeframe for reapplication to MTU; and an Eighth Amendment medical claim in Count Six against Defendant Winsky.   The Court recommends that the remaining claims and Defendants be dismissed.

**IT IS RECOMMENDED that** Plaintiff's Motion to Amend/Correct (Doc. 14) be **granted** as set forth herein.

**IT IS FURTHER RECOMMENDED that** the Court order the Defendants named in Section IV herein to answer the claims set forth in that section, within 60 days of the Court's order on this Report and Recommendation.

**IT IS FURTHER RECOMMENDED that** the Court find Plaintiff's Motion for Extension of Time to Effect Service (Doc. 13) **moot**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of

Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendations of the Magistrate Judge.

Dated this 15th day of October, 2015.

Honorable Deborah M. Fine
United States Magistrate Judge